UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


KENNETH BRAZZELL,                    ]
                                     ]
        Plaintiff,                   ]
                                     ]
v.                                   ]        No. 3-08-00410
                                     ]        JUDGE HAYNES
                                     ]
THE GAP, INC.,                       ]
                                     ]
        Defendant.                   ]


### M E M O R A N D U M

Plaintiff, Kenneth Brazzell, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA") against the Defendant, The Gap, Inc. Plaintiff asserts that the Defendant discriminated against him on the basis of his disability. The Defendant filed an answer denying Plaintiff's allegations. Pursuant to the Court's Order (Docket Entry No. 14), the parties proceeded with discovery on the sole issue of whether Plaintiff has a "disability" under the ADA.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 27), contending that Plaintiff's physical impairment was neither severe nor permanent and thus did not substantially limit him in any major life activity.

In response (Docket Entry No. 32), Plaintiff asserts that he has an "actual" physical impairment that substantially limits his

major life activity of walking and he has a "record of" such an impairment.[1]

For the reasons set forth below, the Court finds from the facts that Plaintiff has failed to show that he has an actual disability or had a record of a disability and concludes that the Defendant's motion for summary judgment should be granted.

## I. FINDINGS OF FACT[2]

Plaintiff, Kenneth Brazzell, began working at the Gap's southern distribution center as a merchandise handler in May 1997. (Docket Entry No. 33, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 1). In March 2005, Plaintiff took an authorized leave of absence from work because of back problems he sustained from a non-work related incident. Id. at ¶ 2. In his deposition, Plaintiff testified that he suffered stiffness and

_____

[1] In his Complaint, Plaintiff did not allege that he had a "record of" an impairment, but advances this theory in his response. In addition to asserting that he had an actual impairment, Plaintiff originally alleged in his Complaint that he was "regarded as" having an impairment. Because Plaintiff did not address this theory in response to the Defendant's motion for summary judgment as to the "regarded as" theory, the Court deems that theory abandoned.

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

2

severe pain from his neck down to his low back and waist. (Docket Entry No. 32, Brazzell Deposition at pp. 21-22). Plaintiff stated that he had trouble gripping with his hands and had difficulty walking and standing for long periods of time. Id. Plaintiff testified that he could not take a full stride but only could take "baby steps" and that he could only stand for five to ten minutes at a time. Id. at pp. 22-23.

In April 2005, Plaintiff was given work restrictions of lifting no more than thirty pounds, no climbing, no crawling, no walking for more than thirty minutes with a fifteen minute break after thirty minutes, and no squatting or stooping. Id., Jamie Swaim Deposition at p. 60. As of August 15, 2005, Plaintiff's restrictions were no pushing or pulling over fifteen pounds, no repeated squatting or bending, and no lifting over fifteen pounds. Id. at p. 64. Sometime after September 26, 2005, Plaintiff's physician found a tumor in Plaintiff's left shoulder, two bulging discs, disc degeneration and deterioration, and arthritis and spurs. Id. at p. 84.

In January 2006, while still on leave, Plaintiff had surgery on his cervical spine to remove a bone spur. (Docket Entry No. 33, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 4). Plaintiff suffered no permanent impairments, effects or ramifications from that surgery. Id. However, according to Plaintiff, the surgery did not address his severe lower back pain

and right leg pain from which he continued to suffer after his return to work. Id.

Plaintiff's leave of absence ended in March 2006. Id. at ¶ 3. Plaintiff returned to Gap as a merchandise handler in April 2006, after Jamie Swaim, Gap's Human Resources Generalist, called him in March and told him to return to work. Id. at ¶ 5. Plaintiff primarily dealt with Swaim at Gap, regarding Plaintiff's work restrictions. Id. at ¶ 6. Plaintiff admitted in his deposition that Swaim treated Plaintiff well and complied with Plaintiff's work restrictions. Id. Plaintiff also testified that he believed that Swaim understood his physical impairments and job restrictions and did not have to correct her on his condition. Id. at ¶ 7. Nor was Plaintiff aware of any managers or supervisors saying that they believed Plaintiff's physical condition was worse than it was. Id.

After Plaintiff's return to Gap in 2006, Swaim relied exclusively on Plaintiff's medical work restrictions in evaluating when, whether and under what circumstances to put him back to work at his position. Id. at ¶ 8. From March through September 2006, Plaintiff's only work restrictions were that he was not to lift over thirty pounds and not work more than eight hours a day and five days a week. Id. at ¶ 10. Plaintiff's physician noted on March 29, 2006, that Plaintiff had low back pain and he recommended treatment with epidural injections. (Docket Entry No. 32, Swaim Deposition, attachment thereto, 3/29/2006 medical record). On

4

April 26, 2006, Plaintiff signed a Restricted Duty Request that limited his lifting to thirty pounds. (Docket Entry No. 33, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 11). Plaintiff's work schedule was already limited to eight hours a day and five days a week. Id. Swaim testified that if Plaintiff believed he needed more restrictions then he would have been required to get a doctor's authorization for further restrictions. (Docket Entry No. 32, Swaim Deposition at pp. 117-18). On June 8, 2006, in an employee assessment report, Plaintiff was noted as having restrictions that hampered his mobility. Id., Swaim Deposition, Exhibit No. 23 at p. 3.

Plaintiff testified that after returning to work he had difficulty walking on concrete, long distances and climbing stairs. Id., Brazzell Deposition at pp. 148-49. Plaintiff further testified that he could only take baby steps and stand for three to five minutes at a time. Id. at pp. 149-152.

As to his back pain, Plaintiff testified that in the months following his return to Gap his back bothered him, depending on the day. Id. at pp. 90, 129-31, 178-79, 188-90. Plaintiff did not consider himself to suffer from chronic back pain because he did not "hurt all the time," just certain days. Id. at pp. 188-90. Plaintiff stated that he had "good days and bad days," and that he could walk, stand, and perform his job as long as he was able to take his time. Id. at pp. 90, 129-31, 178-79, 188-90. Plaintiff

5

also stated that he was able to take care of himself, walk around his house and outdoors, and drive wherever he wanted to go. (Docket Entry No. 33, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 14). Plaintiff also was able to go squirrel hunting in August 2006. Id. at ¶ 15.

On June 21, 2006, Dr. Vaughn Allen noted that Plaintiff complained of pain in his low back and right foot and Plaintiff had no motor loss. (Docket Entry No. 32, Swaim Deposition, attachment thereto, Exhibit No. 25). On June 28, 2006, Dr. Allen reported that a magnetic resonance imaging scan revealed a disc bulge and that Plaintiff would be treated with physical therapy. Id. Plaintiff saw Dr. Allen again on August 30, 2006, and Dr. Allen noted that Plaintiff had low back pain and right leg pain to the foot and that Plaintiff's treatment with three epidurals and physical therapy had been ineffective. Id.

On September 6, 2006, Dr. Allen reported that Plaintiff had some narrowing of the spinal canal, a disc bulge, and mild degenerative changes. Id. Dr. Allen noted that Plaintiff continued to suffer pain and recommended pain management. Dr. Allen further noted that Plaintiff could not do heavy work, but could continue working with his April work restrictions. Id., Exhibit No. 24.

On September 8, 2006, Dr. Allen completed a form that had been sent to Dr. Allen by Gap on or around August 21, 2006, entitled

6

"Medical Certificate of Disability." Id., Exhibit No. 27. Swaim explained that the purpose of the form was to help Gap evaluate Plaintiff's request for an accommodation. The completed form ostensibly was faxed and mailed back to Gap on September 11, 2006. Id. Dr. Allen answered in the affirmative (1) that Plaintiff had a mental or physical impairment, (2) that Plaintiff's condition affected his ability to perform one or more major life activities, and (3) that Plaintiff was substantially limited by his mental or physical impairment from performing one or more major life activities. Id., Exhibit No. 27 at pp. 2-3. Dr. Allen also answered that Plaintiff was incapable of performing all of the essential functions of his position without any special accommodations. Id. at p. 3. In answering what accommodations might be effective in enabling Plaintiff to perform the essential functions of his job, Dr. Allen stated on a separate page that Plaintiff could perform work within the following limits: lifting not to exceed thirty pounds, work day limited to eight hours and work week limited to five days. Id., Exhibit No. 24. These restrictions were made permanent. Id.

On September 13, 2006, Plaintiff was terminated. Two weeks later, on September 27, 2006, Plaintiff went to see Dr. Sabir Guha for a physical. Under the heading "Spine, Other Musculoskeletal" on a medical questionnaire, Dr. Guha indicated that Plaintiff had no "[p]revious surgery, deformities, limitation of motion, [or]

7

tenderness." (Docket Entry No. 30, Brazzell Deposition, attachment thereto, Exhibit No. 9).

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing

8

> law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will
> not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part).

Earlier the Supreme Court defined a material fact for Rule 56

purposes as "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no

`genuine issue for trial.'" Matsushita Electrical Industrial Co.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations

omitted).

A motion for summary judgment is to be considered after

adequate time for discovery. Celotex, 477 U.S. at 326 (1986).

Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the

need for additional discovery after the filing of a motion for

summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th

Cir. 1989). But see Routman v. Automatic Data Processing, Inc.,

873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment

motion as to the required showing of the respective parties, as

described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears
> the initial responsibility of informing the district
> court of the basis for its motion, and identifying those
> portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact. . . .
> [W]e find no express or implied requirement in Rule 56

9

that the moving party support its motion with affidavits
or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears
the burden of satisfying Rule 56(c) standards." Martin v. Kelley,
803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden
is to show "clearly and convincingly" the absence of any genuine
issues of material fact. Sims v. Memphis Processors, Inc., 926
F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak,
Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant
has met its initial burden of `demonstrat[ing] the absence of a
genuine issue of material fact,' the nonmoving party then `must set
forth specific facts showing that there is a genuine issue for
trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United
States Court of Appeals for the Sixth Circuit warned that "the
respondent must adduce more than a scintilla of evidence to
overcome the motion [and]. . . must `present affirmative evidence
in order to defeat a properly supported motion for summary
judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479
(6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of
Appeals explained that:

> The respondent must "do more than simply show that there
> is some metaphysical doubt as to the material facts."
> Further, "[w]here the record taken as a whole could not
> lead a rational trier of fact to find" for the
> respondent, the motion should be granted. The trial

10

court has at least some discretion to determine whether
the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted).  See also Hutt v.
Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A
court deciding a motion for summary judgment must determine
`whether the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then
determines if the material factual dispute is genuine, applying the
governing law.

> More important for present purposes, summary judgment
> will not lie if the dispute about a material fact is
> "genuine," that is, if the evidence is such that a
> reasonable jury could return a verdict for the nonmoving
> party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are
> convinced that the inquiry involved in a ruling on a
> motion for summary judgment or for a directed verdict
> necessarily implicates the substantive evidentiary
> standard of proof that would apply at the trial on the
> merits. If the defendant in a run-of-the-mill civil case
> moves for summary judgment or for a directed verdict
> based on the lack of proof of a material fact, the judge
> must ask himself not whether he thinks the evidence
> unmistakably favors one side or the other but whether a
> fair-minded jury could return a verdict for the plaintiff
> on the evidence presented.  The mere existence of a
> scintilla of evidence in support of the plaintiff's
> position will be insufficient; there must be evidence on
> which the jury could reasonably find for the plaintiff.
> The judge's inquiry, therefore, unavoidably asks whether
> reasonable jurors could find by a preponderance of the
> evidence that the plaintiff is entitled to a verdict --
> "whether there is [evidence] upon which a jury can

11

> properly proceed to find a verdict for the party
> producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

> The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

12

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

13

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are

14

there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) he is an individual with a disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he suffered an adverse employment action solely because of his disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996) (citing Maddox v. Univ. of Tenn., 62 F.3d 843, 846 (6th Cir. 1995)).

An individual is disabled under the ADA if: (1) he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) he has a record of such

15

impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). A major life activity is substantially limited if the employee is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. at § 1630.2(j)(i), (ii). In the context of working, a plaintiff would be required to show an inability to work in a broad class of jobs, not just "one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(i).

In Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms "substantially" and "major" must be "interpreted strictly."[3] The

_____

[3]The Court notes that the "ADA Amendments Act of 2008" ("ADAAA"), that became effective January 1, 2009, instructed courts that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the] Act." Pub. L. No. 110-325, § 4(A), 122 Stat. 3553, 3555 (2008). The ADAAA rejected the Equal Employment Opportunity Commission's regulations "defining the term

Court stated that "Merely having an impairment does not make one disabled for purposes of the ADA." Id. at 195. For an impairment to be a substantial limitation of a major life activity, the impairment must "prevent[] or severely restrict[] [an] individual from doing activities that are of central importance to most people's daily lives." Id. at 198. Further, "[t]he impairment's impact must also be permanent or long term." Id. Thus, "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the [ADA]." Mahon v. Crowell, 295 F.3d 585, 590-91 (6th Cir. 2002).

Under the ADA, the disability issue must be determined on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 567 (1999) (for an ADA claim, the ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial").

---

'substantially limits' as 'significantly restricted'" because that definition expressed "too high a standard." Id. at § 2(a)(8), 122 Stat. at 3554. Further, the ADAAA expressly rejected major Supreme Court decisions construing the ADA, specifically, the Supreme Court's directive in Toyota, 534 U.S. at 197-98, that the terms "substantially" and "major" "'need to be interpreted strictly to create a demanding standard for qualifying as disabled,' and that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'" Id. at § 2(b)(4), 122 Stat. at 3554. However, the ADAAA does not apply to this case because the Court is to apply the ADA law that was in effect at the time of the alleged conduct. Verhoff v. Time Warner Cable, Inc., 299 Fed. Appx. 488, 492 n.2 (6th Cir. 2008).

Here, Plaintiff contends that his back problems substantially limited his ability to walk. The Defendant contends that Plaintiff's back problems did not severely restrict his ability to walk, and even if they did, Plaintiff has not produced any evidence that his impairment was permanent or long-term.

### A. ACTUAL DISABILITY

Plaintiff testified that because of severe low back pain and pain in his right leg he was unable to walk long distances, climb stairs, or walk on concrete without suffering from severe pain. Plaintiff could only take "baby steps" and could only stand three to five minutes at a time. However, according to Plaintiff, he had "good days and bad days," and he could walk, stand, and perform his job as long as he was able to take his time. Plaintiff also could take care of himself, walk around his house and outdoors, and drive wherever he wanted to go. Plaintiff even went squirrel hunting in August 2006.

Based on this record, Plaintiff fails to show that his ability to walk was severely restricted. Plaintiff's testimony reveals that his back problems only moderately or intermittently restricted his ability to walk. See Mahon, 295 F.3d at 590-91; see also Bryson v. Regis Corp., 498 F.3d 561, 576 (6th Cir. 2007) (finding that an employee who could only stand for fifteen to twenty minutes at a time and sometimes for "'a[n] hour, an hour and a half, two hours'" was not substantially limited with respect to walking);

18

Satterly v. Borden Chem., Inc., 24 Fed. Appx. 471, 472 (6th Cir. 2001) (employee suffering from an arthritic condition in back and had difficulty walking and walked at a slower pace than others was not substantially impaired).

Moreover, from April 26, 2006, to September 8, 2006, Plaintiff's work restrictions remained constant: lifting not to exceed thirty pounds, work day limited to eight hours and work week limited to five days. A lifting restriction of thirty pounds is not substantially limiting. See McKay v. Toyota Mfr., USA, 110 F.3d 369, 373 (6th Cir. 1997) (lifting restriction of ten pounds frequently and twenty pounds maximum was not substantially limiting); Law v. City of Scottsville, No. 98-6335, 221 F.3d 1335, 2000 WL 799742, at * 4 (6th Cir. 2000) ("Federal case law supports that a maximum weight restriction is not a disability as defined by the ADA."); Gerton v. Verizon South Inc., 145 Fed. Appx. 159, 166 (6th Cir. 2005) (finding that plaintiff failed to show how a five to ten pound lifting restriction substantially limited her ability to lift anything else in her daily life); Adams v. Potter, 193 Fed. Appx. 440, 444 (6th Cir. 2006) (finding plaintiff not disabled where, although plaintiff was limited in lifting objects heavier than fifty pounds, prolonged standing, and repetitive bending, twisting, and stooping, the plaintiff could care for his personal hygiene, fish, drive, work as a paralegal, play non-contact sports, and engage in "ordinary activities of daily living," including

19

sexual relations, and the Court noted that "'The number of Americans restricted by back problems to light work is legion. They are not disabled.'") (quoting <u>Mays v. Principi</u>, 301 F.3d 866, 869 (7th Cir. 2002)); <u>see also</u> <u>Doren v. Battle Creek Health Sys.</u>, 187 F.3d 595, 599 (6th Cir. 1999) (finding that limitation to forty hours a week did not substantially limit the major life activity of working) (citing <u>Vonderheide v. United States Post Office</u>, 156 F.3d 1233, No. 97-5508, 1998 WL 432478, at *2 (6th Cir. July 16, 1998) (the "inability to complete more than 40 hours of work in a 40-hour week hardly qualifies . . . as disabled. Indeed, most people work 40 hours per week.")).

Further, Plaintiff has not established that his ability to walk was permanently restricted. Plaintiff's testimony revealed that his back pain was intermittent as he did not "hurt all the time" and that he had "good days and bad days." "[T]emporary physical conditions . . . do not generally constitute substantial impairments. . . . and the mere possibility of recurrence is not sufficient to establish substantial impairment." <u>See</u> <u>Plant v. Morton Int'l, Inc.</u>, 212 F.3d 929, 938, 937 (6th Cir. 2000) (where plaintiff stated his impairments were "on and off").

Accordingly, Plaintiff has not presented evidence that he had an actual disability.

20

## B. RECORD OF DISABILITY

To have a "record of such impairment," a plaintiff must prove he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. 1630.2(k). Thus, claims under this theory "would appear to succeed or fail for many of the same reasons as claims under § 12102(2)(A) (based upon an actual impairment), because both require a predicate showing of a mental or physical impairment that substantially limits one or more major life activities." Edwards v. Ford Motor Co., 218 F. Supp.2d 846, 851 (W.D. Ky. 2002). In support of his "record of" claim, Plaintiff relies on certain 2005 work restrictions, 2006 office notes from his doctor, and Dr. Allen's Medical Certification of Disability ("MCOD"). The reliance on these documents is insufficient for proving this claim.

Plaintiff's 2005 work restrictions became progressively less limiting over the course of a year. In April 2005, Plaintiff was given work restrictions of lifting no more than thirty pounds, no climbing, no crawling, no walking for more than thirty minutes with a fifteen minute break after thirty minutes, and no squatting or stooping. On August 15, 2005, Plaintiff's restrictions were no pushing or pulling over fifteen pounds, no repeated squatting or bending, and no lifting over fifteen pounds. By March 2006, Plaintiff's only work restrictions were that he was not to lift

21

over thirty pounds and not work more than eight hours a day and five days a week. These restrictions would remain in place until his termination in September 2006. As stated previously, such restrictions are not substantially limiting. <u>See</u> <u>McKay</u>, 110 F.3d at 373; <u>Law</u>, 2000 WL 799742 at * 4; <u>Gerton</u>, 145 Fed. Appx. at 166; <u>Adams</u>, 193 Fed. Appx. at 444. Further, Plaintiff's lessening of his earlier work restrictions indicate that his impairment was not permanent or long term.

Plaintiff's reliance on his doctor's 2006 office notes is equally misplaced. On June 21, 2006, Dr. Vaughn Allen noted that Plaintiff complained of pain in his low back and right foot and Plaintiff had no motor loss. A week later Dr. Allen reported that Plaintiff had a disc bulge and Plaintiff would be treated with physical therapy. Dr. Allen's assessment was no different on August 30, 2006. On September 6, 2006, Dr. Allen noted that Plaintiff could not do heavy work, but could continue working with the same work restrictions that had been in place since Plaintiff's return to Gap. Again, as stated previously, Plaintiff has not shown that his restrictions were substantially limiting. <u>See</u> <u>Sebest v. Campbell City Sch. Dist. Bd. of Education</u>, 94 Fed. Appx. 320, 326 (6th Cir. 2004) (despite plaintiff presenting evidence of suffering from leukemia in the past, plaintiff was deemed to have not demonstrated having a record of an impairment that

22

substantially limits a major life activity). Accordingly, Plaintiff's reliance on these documents fails.

Lastly, Plaintiff asserts that Dr. Allen's MCOD is a record of a disability because it reflects Dr. Allen's opinion that Plaintiff was substantially limited in a major life activity. However, the terms "substantially" and "major" are legal terms of art, and whether a plaintiff meets the definition of disability is a legal conclusion made by the Court. Toyota, 534 U.S. at 197-98; United States v. Safa, 484 F.3d 818, 821 (6th Cir. 2007) ("[W]e have consistently recognized that 'opinions phrased in terms of inadequately explored legal criteria' should be excluded from evidence."); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999) (noting doctor's use of the term, "disabled," while not unusual, was not an accurate definition under the ADA); Johnson v. Peralta Cmty. College Dist., No. C-94-4255 MMC (PJH), 1997 WL 227903, at *6 (N.D. Cal. April 28, 1997) (finding letter of plaintiff's doctor's conclusions inadmissible as to the matter asserted). Dr. Allen's opinion that Plaintiff was substantially limited in a major life activity is contradicted by his reissuing the same work restrictions that Plaintiff was under throughout 2006. As stated previously, these work restrictions do not constitute a disability under the ADA.

Accordingly, Plaintiff has failed to present evidence that he had a "record of" disability.

23

### III. CONCLUSION

Accordingly, Defendant's motion for summary judgment (Docket Entry No. 27) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the _10th_ day of June, 2009.

        WILLIAM J. HAYNES, JR.
        United States District Judge